EDWARD J. GUILZON AND CAROLYN J. GUILZON,
PETITIONERS *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 23402-90.          Filed August 6, 1991.

*Kenneth B. Kramer, Thomas J. O'Rourke,* and *Virginia J. Townsend,* for the petitioners.
*Susan J. Rascoe,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax of $8,258 for taxable year 1987.

The principal issue is whether a lump-sum payment received by petitioner, Edward J. Guilzon, from the Civil Service Retirement System (CSRS) fund pursuant to 5 U.S.C. sec. 8343(a) (1987) is taxable under section 72(e).[1] The subsidiary issue is whether, if the lump-sum payment is taxable, the portion of that payment representing a "deemed deposit" is includable in petitioners' taxable income for 1987.

This case was submitted fully stipulated pursuant to Rule 122(a). All the facts are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by reference.

Petitioners, Edward J. Guilzon and Carolyn J. Guilzon, resided in Kendall County, Texas, at the time the petition in this case was filed. Reference to petitioner is to Edward J. Guilzon. Petitioners filed their Federal income tax return

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

and an amended return for 1987 with the Internal Revenue Service Center, Austin, Texas.

Petitioner was employed by the U.S. Army Corps of Engineers for over 30 years before retiring on January 3, 1987, at which time he was over the age of 55.[2] He participated in the CSRS while so employed. Petitioner made mandatory after-tax contributions to the CSRS fund totaling $36,820.35. Said contributions were withheld from petitioner's salary. Petitioner's lump-sum credit at the time of his retirement was $37,066.35 consisting of $36,820.35 of contributions and a $246 "deemed deposit."

On March 23, 1987, petitioner received a letter from the Office of Personnel Management (OPM) outlining certain options petitioner had with regard to his retirement annuity. On April 1, 1987, petitioner elected the alternative option for a lump-sum payment and an annuity made available by 5 U.S.C. sec. 8343(a) (1987).[3] During 1987, petitioner received $55,691.28 consisting of $36,820.35 as a lump-sum credit payment and $18,870.93 paid as an annuity. The annuity was determined by calculating the amount of annuity to which petitioner would have been entitled if he had not elected the lump-sum payment and reducing the same by the amount of the annuity which the gross, i.e., pretax, amount of the lump-sum payment would have provided.

Petitioners filed their original 1987 Federal income tax return, reporting as income $17,644 of the annuity payment ($18,870.93). Petitioners did not report the lump-sum payment, claiming it was merely a refund of previously taxed contributions.

Respondent determined that $34,049 of the lump-sum payment was subject to tax, said amount being calculated by applying the exclusionary ratio set forth in section 72(b) to the lump-sum credit of $37,066.

The statutory provisions to which we direct our attention are section 402(a)(1) and section 72. The former provides:

---

[2]We note that since an early retirement is not involved herein, we are not presented with a sec. 72(t) issue. See *Shimota v. United States,* 21 Cl. Ct. 510, 525-526 (1990), on appeal (Fed. Cir., Nov. 1, 1990).

[3]The Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, 104 Stat. 1388, while maintaining this option for a severely limited class of eligible individuals, suspended it for 5 years for the vast majority of CSRS employees.

"the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities)." If we find that section 72 applies to the payment in question, its treatment for tax purposes will be governed by section 72(e), since the payment was not "received as an annuity."[4]

Before proceeding with our analysis as to the applicability of these statutory provisions, we think it important to observe that petitioners have devoted a considerable amount of their argument to the proposition that a return of capital is tax free and that the payment in question was a return of capital since it represented petitioner's contributions to the CSRS. The smokescreen thus created has clearly clouded petitioners' view of the case. This case, however, does not involve the question whether petitioner can recover his contributions tax free; there is no doubt that he can, and respondent does not argue otherwise. The issue herein is the timing of that recovery, namely, should that recovery be accomplished through an offset of the contributions against the payment in question or should it be accomplished by an offset of an allocable portion of the contributions against the benefit payments when made to petitioner. Thus, the question is not *whether* but *when*. In this context, much of petitioners' argument, particularly the impact of the statutory provisions relating to the CSRS (5 U.S.C. sec. 8331 et seq.) and its legislative history, as well as that of the nontax and tax provisions of the Employment Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, upon which they rely, falls by the wayside.

We further observe that our analysis will take into account the most recent guidelines for statutory construction enunciated by the Supreme Court. In *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989), the

---

[4]The portion of sec. 72(e) involved herein reads as follows:

SEC. 72(e). AMOUNTS NOT RECEIVED AS ANNUITIES.—

  (1) APPLICATION OF SUBSECTION.—

    (A) IN GENERAL.—This subsection shall apply to any amount which—

      (i) is received under an annuity, endowment, or life insurance contract, and

      (ii) is not received as an annuity, if no provision of this subtitle (other than this subsection) applies with respect to such amount.

Court stated: "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' [Citation omitted]." See also *Demarest v. Manspeaker,* 498 U.S. ___ (1991) (slip op. at 6). As a further guideline, the Supreme Court has also stated in *Badaracco v. Commissioner,* 464 U.S. 386, 398 (1984):

The cases before us, however, concern the construction of existing statutes. The relevant question is not whether, as an abstract matter, the rule advocated by petitioners accords with good policy. * * * Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement. * * *

In such context, petitioners' arguments as to the impact of a legislative policy to provide more favorable benefits to Federal employees through the enactment of a revamped Civil Service Retirement System in 1986 miss the mark.

Finally, we note that, while this case is one of first impression in this Court, the precise issue before us has been decided for respondent by the Claims Court. *Shimota v. United States,* 21 Cl. Ct. 510 (1990), on appeal (Fed. Cir., Nov. 1, 1990). Since we completely agree with Judge Robinson's thorough and well-reasoned analysis and disposition, we will not engage in a detailed discussion herein. Rather, we will confine ourselves to a summary of our conclusions as to the various strands of petitioners' arguments with some augmentation of Judge Robinson's analysis.

There are three main prongs to petitioners' position: (1) The CSRS is not "an employees' trust described in section 401(a)" and therefore does not fall within the ambit of section 402(a) which provides for taxability under section 72 (see *supra* p. 239); (2) even if the CSRS is such a plan, section 72 does not apply because payment from the CSRS fund was not "received under an annuity * * * contract" as required by section 72(e) (see *supra* note 4); and (3) even if the previous contentions are rejected, the payment in question is not taxable to petitioner because that payment was made under an arrangement which was separate from the annuity payments to which he was entitled. We find all three prongs of petitioners' position to be without merit.

Petitioners' first prong rests principally on the assertion that the CSRS is a "governmental plan" and that various provisions of the Internal Revenue Code deal separately with a "governmental plan." To a very large degree, this prong has been demolished by *Shimota v. United States*, 21 Cl. Ct. at 519-520, wherein the Claims Court emphasizes that the inclusion of the CSRS within the description of section 401(a) has been reflected in the regulations, sec. 1.72-2(a)(3)(iii), Income Tax Regs., and in respondent's rulings, e.g., Rev. Rul. 58-472, 1958-2 C.B. 30, 32, and that section 72 has been amended on numerous occasions during the intervening period without any change in this view. Furthermore, petitioners' reference to the separate treatment of a "governmental plan" in sections 414(d) and 501(c)(25)(C) fails to recognize that those sections were directed toward the treatment of qualified plans meeting the *requirements* of section 401(a) and took into account the fact that Government plans did not have to meet all of those requirements. It does not follow that a plan that does not meet all of the requirements of section 401(a) cannot nevertheless be said to be "described in section 401(a)." While petitioners' reference to the separate treatment of a "governmental plan" in sections 72(p)(4), 219(g)(5)(A), and 818(a) is more to the point, we are not persuaded that this aspect of their argument is sufficient to tip the scales in favor of their position. We further note that our analysis is reinforced by the provisions of section 402(a)(4) dealing with the taxability of distributions by the United States to nonresident aliens—a subsection that would have been totally unnecessary if petitioner's argument were correct. See *Shimota v. United States, supra* at 519. Finally, we do not agree with petitioners' contention that the action of Congress in enacting the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, demands an acceptance of the first prong of his position. See *Shimota v. United States, supra* at 520. In sum, we are satisfied that there are no inconsistencies in the statutory language dealing with "governmental plans." In any event, even if some inconsistency could be said to exist, we find it insufficient to persuade us to agree with the first prong of petitioners' position.

The second prong of petitioners' position is that section 72 does not, in any event, apply because that section requires that the payment be made "under an annuity * * * contract." (Emphasis supplied.) See supra note 4. Petitioners contend that the rights in respect of the CSRS are not embodied in a "contract" but are simply benefits subject to change through the exercise of the sovereign power of the Government. The Claims Court has pointed out, however, that the courts have consistently held that amounts received from the CSRS fund are treated, for income tax purposes, as having been received as "amounts received 'under an annuity, endowment or life insurance contract.' " See *Shimota v. United States, supra* at 521, and cases cited thereat. The cases relied on by petitioners to support a contrary view involve the question whether, *in a nontax context,* the Government undertook a binding, unmodifiable commitment to Government employees by enacting legislation and are consequently clearly distinguishable.

Petitioners' third prong asserts that, in any event, the lump-sum payment and the annuity payments to which he was entitled came from separate accounts and that, consequently, the former payment was not received under an "annuity contract" so as to make section 72(e) applicable. Initially, we note that section 1.72-2(a)(3)(i), Income Tax Regs., provides that "all distributions or payments (other than those described in subdivision (iii) of this subparagraph) which are attributable to a separate program of interrelated contributions and benefits are considered as received under a single contract."[5] Subdivision (iii) specifically provides that "Section 72 shall be applied to distributions received under the Civil Service Retirement Act in the manner prescribed in subdivision (i) of this subparagraph." We think that the factual foundation involved herein falls

---

[5]The pertinent portion of sec. 1.72-2(a)(3)(i), Income Tax Regs., is as follows:

Sections 402 and 403 provide that certain distributions by employees' trusts and certain payments under employee plans are taxable under section 72. * * * For purposes of applying section 72 to such distributions and payments (other than those described in subdivision (iii) of this subparagraph), each separate program of the employer consisting of interrelated contributions and benefits shall be considered a single contract. Therefore, all distributions or payments (other than those described in subdivision (iii) of this subparagraph) which are attributable to a separate program of interrelated contributions and benefits are considered as received under a single contract. * * *

squarely within the foregoing provisions. *Shimota v. United States, supra* at 522. We reject petitioners' attempt to avoid the impact of these provisions by pointing to the separate use of the terms "lump-sum credit" and "annuity" in 5 U.S.C. sec. 8343(a) for the same reasons so fully articulated in *Shimota v. United States, supra* at 522-523. We emphasize, as did the Claims Court, that the "lump-sum credit" reference deals with the situation where the recipient gives up his right to any annuity whatsoever in exchange for the payment of such a credit, a situation which obviously does not obtain herein.

Finally we note that acceptance of petitioners' position herein would, to say the least, produce an anomalous result. The same Congress that enacted the changes in the provisions covering the CSRS also (and at the same session) repealed the provisions of section 72(d) permitting the tax-free recovery of contributions over the first 3 years of payment. See sec. 1122(c)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2467. To conclude that the same Congress intended to provide special treatment for CSRS beneficiaries would carry with it the implication that Congress acted eccentrically. This we are not prepared to do in the absence of specific language which leaves us with no alternative. See *Dunn Trust v. Commissioner,* 86 T.C. 745, 755 (1986).

The long and the short of the matter is that the payment in question should be taxable to petitioner under section 72(e). Accordingly, we sustain respondent's determination.[6]

In order to take into account what appear to be mechanical errors in respondent's calculations and to afford the parties a further opportunity to resolve the question of the proper treatment of the $246 deemed deposit or further explain the same to the Court,

*Decision will be entered under Rule 155.*

---

[6]We observe, without further comment, that the record before us did not include the affidavit of James Corwin. See *Shimota v. United States,* 21 Cl. Ct. 510, 524-525 (1990).