T.C. Memo. 1997-8

UNITED STATES TAX COURT

GARY BENTON LOGSDON AND KAREN RUTH LOGSDON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10919-94.                    Filed January 6, 1997.

Gary Benton Logsdon and Karen Ruth Logsdon, pro se.

Kathey I. Shaw, for respondent.

MEMORANDUM OPINION

HAMBLEN, Judge:  Respondent determined a deficiency in
petitioners' 1991 Federal income tax of $25,281 and an accuracy-
related penalty of $4,870 pursuant to section 6662(a).  Unless
otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule

references are to the Tax Court Rules of Practice and Procedure. After concessions, the principal issue for decision is whether the lump-sum credit from the Civil Service Retirement System (CSRS) is includable in petitioners' gross income pursuant to sections 72(e) and 402(a). If the lump-sum credit is taxable, the subsidiary issue for decision is whether a portion of any deemed deposit or deemed redeposit in respect of that lump-sum credit is includable in petitioners' gross income pursuant to section 72(b) rather than pursuant to section 72(e).

## Background

All of the facts have been stipulated pursuant to Rule 122. The stipulated facts and the attached exhibit are incorporated in our findings by this reference. At the time the petition was filed, petitioners resided in Portland, Oregon. Petitioners' 1991 joint Federal income tax return (1991 return) was prepared and filed on the cash receipts and disbursements method.

During 1991, Gary B. Logsdon retired from the Federal Government and received a lump-sum payment in the amount of $62,873. On their 1991 return, petitioners reported $11,808 of the above amount on lines 17a (Total pensions) and 17b (Taxable amount). No other entry or reference was made by petitioners on their 1991 return for the $51,065 balance of the lump-sum payment. Respondent determined that petitioners were required to include the lump-sum payment in their gross income in 1991.

## Discussion

Petitioners bear the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The fact that the case was submitted fully stipulated does not alter petitioners' burden of proof or the effect of a failure of proof. Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).[1]

Federal employees eligible to participate in the CSRS make mandatory contributions from their salary to the Civil Service Retirement and Disability Fund (Fund). 5 U.S.C. secs. 8334(a), 8331(5) (Supp. 1991). The employing agency withholds such mandatory contributions from the employee's salary. 5 U.S.C. sec. 8334(a)(1). The amount so withheld for CSRS from an employee's salary is taxable in the year in which the mandatory

---

[1]Petitioners stipulated that Mr. Logsdon received a lump-sum payment in the amount of $62,873 but reported only $11,808 as income. After trial, petitioners seek relief from the above stipulation with regard to the amount received, attaching a copy of Mr. Logsdon's Form 1099R to their reply brief. Mr. Logsdon's Form 1099R had not been admitted into evidence when this case was accepted as fully stipulated on Oct. 2, 1995. Such evidence must be presented to the Court in accordance with the Rules governing trials. See Rule 143(b). On Oct. 2, 1995, the record in this case was closed. Accordingly, Mr. Logsdon's Form 1099R is not admitted into evidence and is not a part of the record. Moreover, by suggesting this change to the stipulation for the first time in their posttrial brief, petitioners are advancing a position that respondent was unable to develop for trial and that would prejudice respondent's case. Consequently, we shall not permit petitioners to qualify the parties' stipulation. Rule 91(e); Louisiana Land & Exploration Co. v. Commissioner, 90 T.C. 630, 648-649 (1988).

contribution is withheld.  <u>Malbon v. United States</u>, 43 F.3d 466, 467 (9th Cir. 1994).  Contributions by the employing agency and any accrued interest are taxable upon distribution to the eligible employee.  Secs. 72, 402(a).

Federal employees who met the retirement eligibility requirements and retired after June 5, 1986, could elect the basic annuity or the alternative annuity.  5 U.S.C. secs. 8342(a), 8343a.  The basic annuity is determined by years of service and salary at retirement.  5 U.S.C. sec. 8339.  The alternative annuity provides the employee with a lump-sum credit and a reduced annuity.  5 U.S.C. sec. 8343a.  A lump-sum credit is the unrefunded amount of the employee's contributions and deposits covering earlier service.  5 U.S.C. sec. 8331(8).[2]  The present value of the alternative annuity is designed to be the

---

[2] 5 U.S.C. sec. 8331(8) (Supp. 1991) defines a lump-sum credit, in part, as the unrefunded amount consisting of:

(A) retirement deductions made from the basic pay of an employee * * *;

(B) amounts deposited by an employee * * * covering earlier service, including any amounts deposited under section 8334(j) of this title; and

(C) interest on the deductions and deposits at 4 percent a year to December 31, 1947, and 3 percent a year thereafter compounded annually to December 31, 1956, or, in the case of an employee * * * separated or transferred to a position in which he does not continue subject to this subchapter before he has completed 5 years of civilian service, to the date of the separation or transfer * * *

actuarial equivalent to the present value of the basic annuity.
5 U.S.C. sec. 8343a(c).

## I.   Taxability of a Lump-Sum Credit

Section 72(e) governs the taxation of amounts received under an annuity contract but not received as an annuity.  Sec. 72(e)(1)(A).[3]  Section 72(e)(2)(A) provides that any amount subject to section 72(e) (i.e., an amount received under an annuity contract but not received as an annuity) shall be included in gross income if it is received on or after the annuity start date.[4]  Section 72(e)(5)(E), however, excludes such an amount from gross income to the extent the amount received is in full discharge of a contract.[5]  Section 72(d) provides, for

---

[3]Sec. 72(e)(1)(A) provides:

In general.--This subsection shall apply to any amount which--

   (i) is received under an annuity, endowment, or life insurance contract, and

   (ii) is not received as an annuity, if no provision of this subtitle (other than this subsection) applies with respect to such amount.

[4]Sec. 72(e)(2) provides in pertinent part:

General rule.--Any amount to which this subsection applies--

   (A) if received on or after the annuity starting date, shall be included in gross income * * *

[5]Sec. 72(e)(5)(E) provides:

(continued...)

purposes of section 72, "employee contributions * * * under a defined contribution plan may be treated as a separate contract." To be treated as a separate contract under section 72(d), contributions must be made under a defined contribution plan. Section 414(k)(2) creates a hybrid plan, one with both a defined benefit and a defined contribution component.  Section 414(k)(2) allows a defined benefit plan to be treated as a defined contribution plan to the extent the benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan.[6]

---

[5](...continued)
Full refunds, surrenders, redemptions, and maturities.--This paragraph shall apply to--

      (i) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract, and

      (ii) any amount received under a contract on its complete surrender, redemption, or maturity.

In the case of any amount to which the preceding sentence applies, the rule in paragraph [72(e)](2)(A) shall not apply.

[6]Sec. 414(k) provides in part:

    SEC. 414(k).  Certain Plans.--A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall--

        *   *   *   *   *   *   *

(continued...)

The parties agree that Mr. Logsdon elected under 5 U.S.C. section 8343a to receive an alternative annuity consisting of a lump-sum credit and a reduced annuity. The parties also agree that Mr. Logsdon's contributions to the CSRS should be recovered tax free. Consequently, this case does not involve the question of whether Mr. Logsdon can recover his contributions tax free but rather when that recovery should occur.

While petitioners acknowledge that the CSRS plan, in which Mr. Logsdon participates, is a defined benefit plan, they argue that Mr. Logsdon's contributions were made to a separate account in the CSRS, thus satisfying the separate-account requirement of section 414(k). Thus, petitioners assert that his receipt of the lump-sum credit in 1991 was simply a tax-free return of his contributions. Respondent, however, contends that case law is settled that the lump-sum credit must be reported as taxable income in the year received pursuant to section 72(e)(2).

Petitioners concede that for a separate account to be recognized as a defined contribution plan for purposes of section 414(k), it must have some of the characteristics of a defined contribution plan. Section 414(i) defines a defined contribution

[6](...continued)
(2) for purposes of [section] 72(d) * * * be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan * * *

plan as "a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains, and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."  Although petitioners acknowledge that a defined contribution plan must provide for an individual account for each participant, and the benefits therefrom must be based on the amounts contributed, they contend that gains and losses are not required to be allocated to a participant's account and that maintaining individual records of the participant's contributions is sufficient.  Petitioners focus on the inclusion of the terms "any" and "may" in section 414(i) in defining a defined contribution plan.

In support of their contention, petitioners rely upon the decision in Guilzon v. Commissioner, 985 F.2d 819 (5th Cir. 1993), affg. on other grounds 97 T.C. 237 (1991), in which the Court of Appeals for the Fifth Circuit rejected the Government's assertion that earnings and losses must be allocated to the participant's account.  The Court of Appeals focused on the language of section 414(i) and concluded that an account can qualify as a separate account without having gains and losses being credited to the participant's account.  Id. at 822.  While ultimately concluding that the taxpayer's lump-sum credit was

taxable,[7] the court found that the individual accounting for Guilzon's contributions satisfied the separate-account requirement of section 414(k).  Id.

The Court of Appeals for the Ninth Circuit addressed petitioners' argument in Malbon v. United States, 43 F.3d 466 (9th Cir. 1994), the controlling decision in the Court of Appeals to which an appeal in this case would lie.  See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).  In Malbon v. United States, supra, the taxpayer retired under the CSRS in 1987 and elected the alternative annuity under 5 U.S.C. sections 8342(a) and 8343a, receiving a lump-sum credit and a reduced annuity.  Malbon also contended that his contributions were placed into a separate account in the CSRS, constituting a separate account pursuant to section 414(k) and, consequently, were not taxable.  The Ninth Circuit rejected Malbon's argument and the reasoning of the Fifth Circuit in Guilzon.  Malbon v. United States, supra at 469-470.  Instead, the court reasoned that

> A defined benefit plan provides a benefit regardless of
> the contribution amount or the success of the
> investments.  The amount of the benefit is guaranteed
> based on years of service and salary at time of
> retirement.  A defined contribution plan, however,
> provides a benefit dependent on the investment
> performance of the contributions.  The employee is not

_____

[7]The Court of Appeals for the Fifth Circuit held that Guilzon's lump-sum credit was taxable because the CSRS did not provide a benefit derived from employer contributions as required by sec. 414(k).

> guaranteed any particular benefit, but rather is provided with the account balance at retirement. Section 414(k) provides that where a defined benefit plan provides a benefit based on the separate account of a participant, it may [be] treated as a defined contribution plan. In essence, section 414(k) creates a hybrid plan consisting of both a defined benefit and defined contribution plan. In so doing, the separate account of the participant must therefore maintain the characteristics of a defined contribution plan. <u>Merely maintaining records to keep track of an individual's contribution does not satisfy this requirement.</u> [<u>Id.</u> at 470-471; emphasis added.]

The Ninth Circuit went on to observe that, because Malbon's benefits were determined on the basis of average salary and years of service and because the return of his contributions included no increment for earnings thereon, there was no benefit based upon the balance of the separate account of the taxpayer as required by section 414(k). Without such a benefit, the court concluded that the CSRS did not have a defined contribution component, and Malbon's lump-sum credit was taxable in the year received. Accord <u>Montgomery v. United States</u>, 18 F.3d 500 (7th Cir. 1994); <u>Green v. Commissioner</u>, T.C. Memo. 1994-340.

Although petitioners concede that "the clear language of the statutes * * * must control the outcome of this case," they also assert that the legislative history and other nonstatutory evidence requires a different conclusion. The Ninth Circuit in <u>Malbon v. United States</u>, <u>supra</u> at 471, fn. 11, considered sections 72 and 414 to be unambiguous and refused to rely upon legislative history. Consequently, in this framework, petitioners' argument misses the mark.

The Ninth Circuit, the Courts of Appeals in three other circuits, this Court, and the Court of Federal Claims all concluded that a lump-sum credit does not fall within the definition of a defined contribution plan.  Malbon v. United States, supra; Montgomery v. United States, supra; George v. United States, 30 Fed. Cl. 371 (1994), affd. 90 F.3d 473 (Fed. Cir. 1996); Guilzon v. Commissioner, supra at 242; Green v. Commissioner, supra; Shimota v. United States, 21 Cl. Ct. 510 (1990), affd. 943 F.2d 1312 (Fed. Cir. 1991).  We have carefully considered petitioners' other arguments and have concluded that they cannot prevail against the above decisions, even though, to some extent, they have differing strands of reasoning.

Accordingly, we hold that the CSRS plan does not have a defined contribution plan component because the separate account requirement of section 414(k) was not met.  Mr. Logsdon's lump-sum credit is not treated as received under a separate contract for purposes of section 72(d) and is not excludable pursuant to section 72(e)(5)(E).  Finally, we sustain respondent's determination requiring petitioners to include the entire lump-sum credit of $62,873 in their gross income in 1991 pursuant to section 72(e)(2).

## II.  Deemed Deposits

Some CSRS participants owed the Fund either a deposit or redeposit for civilian service.  The former represents the amount retiring Government participants must pay into CSRS to obtain a credit in determining the retirement annuity for a period in which they were Federal employees but did not contribute to the Fund.  5 U.S.C. sec. 8334(c)  The latter represents a redeposit of CSRS contributions that had previously been withdrawn by the participant but which may be redeposited to obtain credit in determining the retirement annuity for the period during which such withdrawn contributions were originally made.  5 U.S.C. sec. 8334(d); see George v. United States, supra at 380-382.

The CSRS deemed those participants who elected the alternative annuity and owed the Fund either a deposit or redeposit as having paid the amount due (deemed deposit or redeposit, respectively) in the year in which they received their lump-sum credit.  5 C.F.R. sec. 831.2206 (1991).  The CSRS reduced the lump-sum credits of the participants by the deemed deposit or redeposit but regarded the unreduced amount as taxable to the participants for Federal income tax purposes.  Id. Petitioners argue that, if we hold that Mr. Logsdon's lump-sum credit must be included in their gross income, then the amounts representing deemed deposits or deemed redeposits should be taxed

on a prorated basis pursuant to section 72(b).[8]  We need not
address whether any portion of Mr. Logsdon's lump-sum credit is
includable pursuant to section 72(b), for petitioners have not
established that Mr. Logsdon made a deemed deposit or redeposit.
In any event, a similar argument as to a deemed deposit was
rejected by the Ninth Circuit in Malbon v. United States, 43 F.3d
at 471-472, concluding that the economic substance of the
arrangement required that the deemed deposit be taxed as part of
the lump-sum payment in accordance with section 72(e).

III. Section 6662(a)--Accuracy-Related Penalty

Respondent determined that petitioners are liable for an
accuracy-related penalty of $4,870 pursuant to section 6662(a)
for 1991.  Section 6662 imposes a 20-percent penalty on any
portion of any underpayment that is attributable to any
substantial understatement of income tax.  Sec. 6662(a)(2),

---

[8]Sec. 72(b) provides in pertinent part:

SEC. 72(b).  Exclusion Ratio.--

(1) In general.-- Gross income does not include
that part of any amount received as an annuity under an
annuity, endowment, or life insurance contract which
bears the same ratio to such amount as the investment
in the contract (as of the annuity starting date) bears
to the expected return under the contract (as of such
date).

(2) Exclusion limited to investment.-- The portion
of any amount received as an annuity which is excluded
from gross income under paragraph (1) shall not exceed
the unrecovered investment in the contract immediately
before the receipt of such amount.

(b)(2). Respondent based the determination of the section 6662(a) penalty on petitioners' underpayment being due to a substantial understatement. See sec. 6662(b)(2). Section 6662(d)(1)(A) treats an understatement as substantial when it exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return. The understatement is reduced for purposes of section 6662(d)(1)(A) by that portion of the understatement which is attributable to the tax treatment of any item (1) if there is or was substantial authority for such treatment or (2) if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6662(d)(2)(B).

To determine whether the treatment of any portion of an understatement is supported by substantial authority, we must consider whether the weight of authorities in support of the taxpayer's position is substantial in relation to the weight of authorities supporting contrary positions. Norgaard v. Commissioner, 939 F.2d 874 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390; Antonides v. Commissioner, 91 T.C. 686, 702-703 (1988), affd. 893 F.2d 656 (4th Cir. 1990); sec. 1.6662-4(d)(3), Income Tax Regs.

With respect to the penalty under section 6662, the burden of proof is on petitioners. Rule 142(a). Petitioners do not argue that they had substantial authority for their position. Rather, they argue that the penalty should not apply because they

adequately disclosed the lump-sum credit to respondent. In their reply brief, petitioners argue that they had attached a copy of Mr. Logsdon's Form 1099R from the OPM to their tax return, and such an attachment serves as adequate disclosure. The parties, however, stipulated that petitioners reported $11,808 of Mr. Logsdon's lump-sum credit as income but that the return contains no other entries or references to the balance of $51,065.

The interpretation of a stipulation is determined primarily by ascertaining the intent of the parties, and such intent is a question of fact. Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986). Ordinarily, a stipulation of fact is binding on the parties, and we are constrained to enforce it. Rule 91. We shall not permit a party to a stipulation to qualify, change, or contradict the stipulation except where justice requires. Rule 91(e). The Court may modify or set aside a stipulation that is clearly contrary to the facts revealed on the record. Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).

Petitioners' position seeks to qualify the otherwise unambiguous stipulations. Petitioners have not argued that justice requires that we permit them to qualify the stipulations. There is no evidence in the record to support petitioners' contention that Mr. Logsdon's Form 1099R was attached to their return. The parties filed a copy of petitioners' 1991 return as a joint exhibit. No Form 1099R attachment was included with that exhibit. Accordingly, we conclude that petitioners did not

establish that they adequately disclosed the balance of the lump-sum credit.

The accuracy-related penalty pursuant to section 6662(b)(2) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for that portion of the underpayment and that the taxpayers acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether petitioners acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayers' effort to assess their proper tax liability for the taxable year. Id. After carefully examining the record, we find no basis on which we can conclude that petitioners acted with reasonable cause and in good faith with respect to any portion of the understatement determined by respondent. By their own admission, petitioners acknowledge that Mr. Logsdon is a "professional accountant and is well versed in tax reporting procedures," yet they do not present any evidence of their effort to assess their proper tax liability.

Petitioners have failed to prove that they had substantial authority, that they adequately disclosed the relevant facts concerning the lump-sum credit, or that they acted with reasonable cause and in good faith with respect to any portion of the understatement. Because petitioners' understatement for the 1991 taxable year is substantial, we sustain respondent's

determination on this issue.  We have considered all of the other arguments made by petitioners and, to the extent we have not addressed them, find them to be without merit.

<u>Decision will be entered</u>

<u>under Rule 155</u>.