In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 18-3202, 19-3118 & 20-1515

DESIGN BASICS, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

KERSTIENS HOMES & DESIGNS, INC., *et al.*,

*Defendants-Appellees*.

———————

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-726 — **Tanya Walton Pratt**, *Chief Judge*.

———————

ARGUED NOVEMBER 3, 2020 — DECIDED JUNE 16, 2021

———————

Before KANNE, SCUDDER, and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Copyright law protects individual expression while encouraging creativity and maintaining the public interest in spreading ideas. In recent years, however, a cottage industry of opportunistic copyright holders—earning the derisive moniker "intellectual property trolls"—has emerged, in which a troll enforces copyrights not to protect expression, but to extract payments through litigation. Design Basics, LLC fits that bill. The firm, which holds copyright in

several thousand single-family home floor plans, has brought over 100 infringement suits against home builders in recent years. But many defendants—the targets of the settlement-extraction scheme—are starting to push back. This case is a good example.

We have affirmed dismissal of Design Basics's lawsuits twice in recent years. See *Design Basics LLC v. Signature Construction, Inc.*, 994 F.3d 879 (7th Cir. 2021); *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017). We do so again today. In dismissing Design Basics's copyright infringement suit against the Kerstiens family's home building business, the district court recognized that the firm has a thin copyright in its plans because they consist largely of standard features found in homes across America. We agree and affirm.

## I

### A

The Kerstiens family runs a collection of companies that build single-family homes out of Jasper, Indiana. Plan Pros, Inc. and Prime Designs, Inc. are home design companies that license their plans through Design Basics, which acts as a plan broker of sorts by serving as an intermediary between home builders and design firms.

Design Basics started out as a small residential design firm in Omaha, Nebraska. It markets the thousands of plans it holds copyright to through trade publications, promotional materials placed in home improvement stores, and national builder associations. In recent years—under new ownership—Design Basics has become a serial litigant. Indeed, litigation proceeds have become a principal revenue stream for the firm. See *Signature Construction*, 994 F.3d at 883.

The firm also draws income from a licensing scheme for its designs, with fees ranging from $700 to $6,000 per use.

In our two prior cases, we have underscored that Design Basics, while holding itself out as a home designer, is a copyright troll. See *id.* at 882; *Lexington Homes*, 858 F.3d at 1096–97. The firm seeks "to extract rents from market participants who must choose between the cost of settlement and the costs and risk of litigation." *Lexington Homes*, F.3d at 1097. The model is simple: Design Basics holds copyrights to thousands of home floor plans, and its employees receive incentives to stalk the Internet in hopes of finding a target for an infringement suit.

Kerstiens was one such target. In 2013 a Design Basics employee—ostensibly doing market research to develop more business in Indiana—came across Kerstiens's website and saw a few design plans that he believed infringed the firm's copyrighted works. Design Basics and the two design companies then brought this suit in 2016, alleging that ten Kerstiens designs infringed seven copyrighted plans.

B

In time Kerstiens moved for summary judgment. The district court granted that motion and awarded costs and fees, concluding that Design Basics could not show substantial similarity between its copyrighted works and Kerstiens's alleged infringing plans under the standards we announced in *Lexington Homes*. The competing floor plans, the district court explained, had some similar features. But that was not enough under *Lexington Homes* to establish substantial similarity between the architectural works. The superficial similarities between the designs were not unique to the home plans before the court. Indeed, the similarities could be found, the district

court emphasized, in many homes—kitchens near dining rooms, master bedrooms with large bathrooms, and on and on. So Design Basics could not succeed on its copyright infringement claim. In a later order, the district court awarded Kerstiens $518,457.80 in costs and fees. Design Basics appeals both orders.

## II

Our two recent decisions—*Lexington Homes* and *Signature Construction*—affirming judgments against Design Basics more fully describe the copyright law framework and how it relates to the firm's questionable business model. *Lexington Homes* guided the district court's conclusions, and we more recently decided *Signature Construction*, which again foreclosed much of Design Basics's claims. Those decisions all but resolve this appeal.

Copyright protection exists, the Constitution makes clear, to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8; see also *Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183, 1195 (2021). The Copyright Act codifies that principle. Among the mediums protected by copyright are "architectural works." See 17 U.S.C. § 102(a)(8). Encompassed in that definition are the "overall form as well as the arrangement and composition of spaces and elements in the design, but [it] does not include individual standard features." *Id*. § 101.

To establish copyright infringement, Design Basics must prove "ownership of a valid copyright" and that Kerstiens "cop[ied] constituent elements of the work that are original."

*Feist Publ'ns, Inc. v. Rural Tele. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). This appeal concerns only the second element. Embedded within that element are two distinct questions: whether the defendant copied the protected work and whether the copying constituted an improper appropriation. See *Signature Construction*, 994 F.3d at 887; see also 4 Nimmer on Copyright § 13.0[B] (Rev. ed. 2020). The first question asks whether the defendant actually duplicated the work. The second inquiry, which is dispositive for our purposes, concerns the degree of *unlawful* appropriation. We separate the protected elements of a work from unprotected elements and then assess whether the protected elements were improperly appropriated. Improper appropriation, or wrongful copying as the lingo goes, "requires substantial similarities between the defendant's work and *protected elements* in the plaintiff's copyrighted work." *Signature Construction*, 994 F.3d at 888.

We employ the ordinary observer test to assess substantial similarity—assesing "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Id.* (quoting *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 501, 509 (7th Cir. 1994)). In fields defined by common features and dictated by functional concerns, however, copyright protection is very weak. The suburban single-family home design industry, we have observed, is one such field where copyright protection is thin, such that "proving unlawful appropriation takes more than a substantial similarity between the plaintiff's work and the defendant's work." *Id.* at 890.

As we explained in *Signature Construction*, "only a virtually identical plan infringes the plaintiff's copyrighted plan." *Id.* We drew this conclusion in part from two copyright doctrines—*scènes à faire* and merger. French for "scenes of action," *scènes à faire* refers to the standard elements of a genre, which get no copyright protection. See *id.* at 889 n.4. And, for its part, the doctrine of merger helps separate out the weaker protection in copyright from the stronger protection of a patent. Copyright protects expression, whereas a patent protects ideas, concepts, and functions. When something can be expressed in only a limited number of ways, "the expression 'merges' into the idea and cannot receive copyright protection." *Id*. at 889.

### III

With these principles of copyright law in place, we can make quick work of Design Basics's claims. Just as we did in *Lexington Homes* and *Signature Construction*, we conclude again today that Design Basics did not prove an infringement claim. Design Basics failed to show that its copyrighted designs and the allegedly infringing Kerstiens designs are "virtually identical." Design Basics cannot make a case of copyright infringement because the many similarities it points to are standard features not strongly protected by copyright. The Design Basics plans at issue are just that—basic, common, and standard designs entitled to very little copyright protection.

Consider just one of the allegedly infringing designs. The top floor plan is the Kerstiens 704 Plan, which Design Basics alleged infringes on its Duncan Plan, the bottom of the two floor plans.

Kerstiens's 704 Plan



Design Basics's Duncan Plan



Kerstiens's 704 Plan (on the top), to be sure, bears many similarities with Design Basics's Duncan Plan (on the bottom). But those similarities are bound up in standard features and functions found in many homes. It is of no moment that both have a garage or a laundry room off the garage. Nor is it concerning that both designs feature three standard bedrooms on the second floor. No one would expect a house to have its kitchen on the second rather than the first floor.

Count the differences, too. The layouts are distinct—for example, the Duncan garage is on the right side of the house, whereas the Kerstiens 704 garage is on the left. And as the district court pointed out, most of the room dimensions are different. The Duncan model includes a fireplace in the living room and a desk in the third upstairs bedroom. Neither feature can be found in the Kerstiens 704 Plan. The Kerstiens 704 Plan has some distinctive features of its own: an outside entry side door into the garage, a back patio, and a second closet in the master bedroom, to name a few.

We could spill more ink explaining the standard similarities and the many differences across all of the allegedly infringing designs. But doing so is unnecessary. Just this one representative sample comparison suffices to show why the district court was right to reject Design Basics's infringement claim at summary judgment.

Pick any ordinary neighborhood in the Chicagoland area. The same observation follows. Similarities abound between the selected homes and the plans that Design Basics seeks exclusive claim to. The industry standard suburban single-family home is rife with common features for many reasons, but copyright infringement is not among them. Developers cater to vast numbers of potential homebuyers wanting

homes with lasting market value, so they build houses broadly attractive to all comers. And as we have observed, "form follows function so closely" in the market for affordable single-family homes. *Lexington Homes*, 858 F.3d at 1101. "There are only so many ways to arrange a few bedrooms, a kitchen, some common areas, and an attached garage, so not every nook and cranny of an architectural floor plan enjoys copyright protection." *Id.* at 1103 (quotation marks omitted). Design Basics offers over 2,800 floor plans. We would be hard-pressed to find a standard American home bearing no similarities to at least one of those floor plans.

In cases involving fields in which copyright protection is thin, "only extremely close copying is actionable as unlawful infringement." *Signature Construction*, 994 F.3d at 882. Design Basics has not satisfied that exacting standard. A design that shares similar standard features, when taken together to form a whole, may look like potential infringement at first blush. Copyright law rewards original expression and innovation. It does not protect rent-seekers looking to score a quick settlement rather than compete.

## IV

Having successfully fought off a dubious lawsuit, Kerstiens Homes was entitled to an award of costs and fees under the Copyright Act. See 17 U.S.C. § 505. The district court awarded $518,457.90, and we affirm that award.

In copyright infringement suits, there is a strong presumption that prevailing defendants may recover costs. See *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 387 (7th Cir. 2011). Still, that presumption and a district court's discretion must be moored to sound legal principles that look to

"the large objectives of the relevant Act." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). The Supreme Court instructs district courts to look to several factors when exercising their broad discretion to shift fees in copyright cases, including "frivolousness, motivation, objective unreasonableness … and the need to advance considerations of compensation and deterrence." See *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The district court exercised sound discretion in awarding Kerstiens costs and fees, carefully considering the *Fogerty* factors and concluding that awarding fees would discourage Design Basics from manipulating the copyright laws to extract quick settlements. The district court's evaluation of Kerstiens's cost request was just as thorough. We see no abuse of discretion.

For these reasons, we AFFIRM.